IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PATRICIA CAMPANILE, et al.        :        CIVIL ACTION
                                  :
         v.                       :
                                  :
THE HANOVER INSURANCE COMPANY     :        NO. 25-3028

MEMORANDUM

Bartle, J.                                        June 24, 2026

         Plaintiffs Patricia and Christopher Campanile initially brought this action against defendant Hanover Insurance Company ("Hanover") in the Court of Common Pleas of Philadelphia County.  Hanover timely removed it based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).  The Campaniles allege that Hanover breached the terms of their homeowners' insurance policy in failing to pay them for what they deemed to be a cover loss.[1]

         Before the court is the motion of the defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

                                  I

         Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there

---

[1]    The court previously dismissed plaintiffs' claim that defendant acted in bad faith under 42 Pa. Cons. Stat. § 8371 in denying their claim.

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). The court views the facts and draws all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).

                                II

        The following facts are undisputed or taken in the light most favorable to the plaintiffs.

        In June 2024, the Campaniles hired Newton Construction to make repairs on the foundation of their home in West Chester, Pennsylvania.  They stayed elsewhere while the contractor was doing its work.  Upon returning on July 4, 2024, they discovered that fine white dust and debris generated by the work had penetrated their home's HVAC system and had covered "all surfaces" of their home.  It is undisputed that Newton Construction's faulty workmanship on the foundation caused the inundation of dust and debris.

        On July 17, 2024, the Campaniles made a claim to Hanover under their homeowners insurance policy for damages caused by the dust and debris.  They did not seek coverage for

-2-

the faulty workmanship on the foundation.  Hanover denied

coverage for the Campaniles' claim by letter dated July 24,

2024.  The denial letter states that "the policy language

specifically excludes faulty, inadequate, or defective

workmanship from contractors.  It also excludes the silica dust

that escapes during the repair process."  Hanover explicitly

cited two policy exclusions in its letter.

The first is paragraph (B)(3)(b) of "Section I –

Exclusions," which contains the "faulty workmanship" exclusion.

Paragraph B begins with the provision:

> We do not insure for loss to property
> described in Coverages A and B caused by any
> of the following. However, any ensuing loss
> to property described in Coverages A and B
> not precluded by any other provision in
> this policy is covered.

Precluded from coverage under paragraph (B)(3)(b) are

losses that stem from "[f]aulty, inadequate or defective . . .

[d]esign, specifications, workmanship, repair, construction,

renovation, remodeling, grading, [or] compaction." (emphasis

added.)  Not precluded from coverage is "any ensuing loss to the

property" caused by faulty workmanship or repair.

The second exclusion on which Hanover relies is found

in paragraph (A)(2)(c)(6)(e) of "Section I – Perils Insured

Against."  This is the pollution exclusion, which states:

> We insure against direct physical loss to
> the property . . . [w]e do not insure,

however for loss . . . caused by . . . discharge, dispersal, seepage, migration, release or escape of <u>pollutants</u> unless the discharge dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage C.  <u>Pollutants means</u> any solid, liquid, gaseous or thermal <u>irritant</u> or <u>contaminant</u>, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. (emphasis added.)

III

Under Pennsylvania law, the interpretation of an insurance policy is generally a question of law for the court rather than the jury.  <u>401 Fourth Street, Inc. v. Investors Ins. Grp.</u>, 879 A.2d 166, 171 (Pa. 2005).  The court's "primary goal in interpreting a policy, as with interpreting any contract, is to ascertain the parties' intentions as manifested by the policy's terms."  <u>Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.</u>, 908 A.2d 888, 897 (Pa. 2006) (internal citations omitted).  In ascertaining the parties' intent, Pennsylvania courts will not consider merely individual terms but will read the entire insurance policy as a whole. <u>Riccio v. Am. Republic Ins. Co.</u>, 705 A.2d 422, 426 (1997).

Words in an insurance policy are given their natural, plain, ordinary meaning, with a court free to consult a dictionary to inform its understanding of terms.  <u>Kvaerner</u>, 908 A.2d at 897.  If the policy defines certain terms, "the court will apply those definitions in interpreting the policy."  <u>Monti</u>

-4-

v. Rockwood Ins. Co., 450 A.2d 24, 25 (Pa. Super. 1982); see also Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006), aff'd, 563 F.3d 339 (3d Cir. 2007).  When the language of the policy is clear and unambiguous, the court must give effect to that language.  401 Fourth St., 879 A.2d at 171; see also Travelers Property Cas. Co. of Am. v. Chubb Custom Ins. Co., 864 F. Supp. 2d 301, 312 (E.D. Pa. 2012).  Pennsylvania courts should read a policy to avoid ambiguities and give effect to all of its provisions.  401 Fourth St., 879 A.2d at 171; Burton v. Republic Ins. Co., 845 A.2d 889, 893 (2004).  However, ambiguous policy language is construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer.  401 Fourth St., 879 A.2d at 171.  Additionally, insurance policy exclusions must be construed narrowly against the drafter and in favor of coverage.  See Mut. Benefit Ins. Co. v. Politsopoulos, 115 A.3d 844, 852, n.6 (Pa. 2015); Spence v. Erie. Ins. Grp., 850 A.2d 679, 682 (Pa. Super. 2004).

        In coverage disputes like this one, insureds bear the initial burden of proving that their loss falls within the scope of coverage.  See McEwing v. Lititz Mut. Ins. Co., 77 A.3d 639, 646 (Pa. Super. 2013).  However, when "an insurer relies on a policy exclusion as the basis for its denial of coverage" the insurer "has asserted an affirmative defense, and accordingly,

bears the burden of proving such defense." Id. (quoting Madison Construction Co. v. Harleysville Mutual Ins. Co., 735 A.2d 100, 106 (1999)) (internal citations and quotation marks omitted).

IV

The policy's faulty workmanship exclusion excludes coverage for loss to property caused by faulty workmanship and repair, but exempts from the exclusion "any ensuing loss" to property.  The Campaniles assert that the concrete dust that was dispersed throughout their home as a result of the faulty workmanship on its foundation is covered as an "ensuing loss."

Hanover argues that a loss that is a natural and foreseeable result of the faulty workmanship, even if the damage occurs to property other than that on which the faulty workmanship occurs, does not constitute an ensuing loss.  In Hanover's view, an ensuing loss only occurs when a loss to "other property wholly separate from the defective property itself" is caused by an independent, non-foreseeable force. Montefiore Med. Ctr. v. Am. Prot. Ins. Co., 226 F. Supp. 2d 470, 479 (S.D.N.Y. 2002).  It references the following example: if a water leak from a poorly maintained roof shorted an electrical socket and started a fire, any fire damage would be covered under an "ensuing loss" clause because a house fire is not the natural and foreseeable consequence of negligent maintenance of a roof.

-6-

Hanover, in support of its position, cites the Pennsylvania Superior Court's non-precedential opinion of Ridgewood Grp., LLC v. Millers Cap. Ins. Co., 2017 WL 781620 (Pa. Super. Ct. Feb. 28, 2017). There, the insurance company argued that the losses plaintiff complained of were excluded under a similar faulty workmanship or repair provision and do not fit the corresponding ensuing loss exception. Id. at *3-4. Unlike the current case, Ridgewood focused on the inadequate repair part of the provision, not faulty workmanship. Id. at *1. The Ridgewood plaintiff failed to maintain its roof, gutters and downspouts. Id. The plaintiff thereafter suffered water damage to its basement after rainwater entered the property due to its poorly maintained property coverings. Id. The court, in finding for the insurance company, looked to Sixth Circuit caselaw that "damages which naturally and foreseeably arise from the excluded cause are excluded" under the faulty workmanship exclusion but "non-foreseeable losses" are covered by the ensuing loss exception. Id. at *4-5 (quoting TMW Enterprises, Inc. v. Federal Ins. Co., 619 F.3d 574, 579 (6th Cir. 2010)) (internal quotation marks omitted). Rainwater damage was a natural result of poorly maintained roofs and gutters. Similarly, Hanover maintains that the dust in the Campaniles' home was also foreseeable because construction work routinely generates fine particulate matter including dust,

-7-

especially when that work was done in proximity to an operating and exposed HVAC system.

The Campaniles, relying on Griggs Rd., L.P. v. Selective Way Ins. Co. of Am., 368 F. Supp. 3d 799, 810 (M.D. Pa. 2019), counter that the ensuing loss provision provides for "coverage for losses except those associated with correcting" the faulty workmanship.  In this case, the Campaniles, as noted, are not seeking damages for the deficient repair to the foundation but for dust causing consequential damage to their home.

The Pennsylvania Supreme Court has stated time and time again that insurance contracts are contracts of adhesion, with any ambiguities to be construed in favor of the insured and against the insurer.  Griggs Rd., L.P. v. Selective Way Ins. Co. of Am., 368 F. Supp. 3d 799, 809 (M.D. Pa. 2019).  Ridgewood contravenes this principle of insurance contract interpretation adopted by the Pennsylvania Supreme Court.  Id.  Ridgewood concluded that the clause at issue contained "a facial ambiguity" but did not construe the policy against the insurer.  Id.  Instead, it adopted another jurisdiction's reasoning without any analysis of the rules of construction of insurance contracts under Pennsylvania law.  Id.

Ridgewood, of course, as a non-precedential decision of an intermediate appellate court, is not binding law in a

-8-

diversity action unless this court predicts that it would be the rule of law adopted by the Pennsylvania Supreme Court.  See SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 204 (3d Cir. 2022); Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co., 609 F.3d 223, 237 (3d Cir. 2010).  As did Judge Brann, this court forecasts that the Supreme Court of Pennsylvania would reject the reasoning of Ridgewood.  See Griggs, 368 F. Supp. at 809.

In the court's view, the contractual language in issue is unambiguous.  The clear meaning of "any ensuing loss" is a loss that follows from faulty workmanship and results in consequential damages to property beyond the property that was the subject of the faulty workmanship.  That is exactly what occurred here.  There is nothing in the language "any ensuing loss" so as to construe it to mean "any ensuing and non-foreseeable loss."

V

Hanover maintains that even if it is incorrect in its interpretation of "any ensuing loss," the loss claimed by the Campaniles is not covered because it is precluded by the policy's pollutant exclusion.

The ensuing loss provision states that "any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered."  Accordingly, in order for an insured to receive coverage under any ensuing loss

exception to the faulty workmanship exclusion, the ensuing loss must not be precluded by any other provision in the policy.

The pollution exclusion of the policy excludes coverage for "discharge, dispersal, seepage, migration, release or escape of pollutants."  It defines pollutants as any "solid, liquid, gaseous or thermal irritant or contaminant including smoking, vapor, soot, fumes, acids, alkalis, chemicals and waste." (emphasis added.)

The Campaniles correctly point out that the list does not mention dust, even though Hanover references dust in other policy provisions.  The Supreme Court of Pennsylvania has repeatedly stated that the word "including" in a statute or contract is generally construed as a term of enlargement or illustration, rather than an exhaustive list.  See, e.g., Dechert LLP v. Com., 998 A.2d 575, 580 (2010); see also Am. Sur. Co. of New York v. Marotta, 287 U.S. 513, 517 (1933).  This rule of construction provides that unnamed persons or things of the same general kind or class are included along with those specifically mentioned in the enumeration.  See McClellan v. Health Maint. Org. of Pennsylvania, 686 A.2d 801, 805 (1996).

Hanover asserts that dust, like the listed items, is an "irritant" or "contaminant" and thus is included as a pollutant.  The Superior Court of Pennsylvania has defined an "irritant" as a "biological, chemical, or physical agent that

-10-

stimulates a characteristic function or elicits a response, especially an inflammatory response." Matcon Diamond, Inc. v. Penn Nat. Ins. Co., 815 A.2d 1109, 1113 (Pa. Super. 2003).  It has also defined a contaminant as "something that contaminates" while the verb "to contaminate" is defined as "to render impure or unsuitable by contact or mixture with something unclean, bad, etc." Municipality of Mt. Lebanon v. Reliance Ins. Co., 778 A.2d 1228, 1233 (Pa. Super. 2001) (quoting Contaminate, Webster's New Universal Unabridged Dictionary (2d ed. 1989)). Dust fits into these definitions.

Our Court of Appeals in Devcon Int'l Corp. v. Reliance Ins. Co., 609 F.3d 214 (3d Cir. 2010), had before it an action where an insurance company sought a declaratory judgment that its policy did not cover injuries and property damage in the Virgin Islands caused by dust from a nearby construction project.  The Court of Appeals noted that the Virgin Islands follows the same guiding principles for the interpretation of insurance contracts as does Pennsylvania. Id. at 219.

The policy there had a pollution exclusion clause virtually identical to the one here. Id. at 217.  It excluded coverage for any "bodily injury and property damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." Id.  "Pollutants"

-11-

were defined in the policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste."  Id.  Like the language here, the word "dust" was not mentioned in the exclusion.

The Court of Appeals, in ruling for the insurer, concluded that the "exclusion means what its plain language says: that the policy provides no insurance coverage when bodily injury or property damage results from airborne solids and fumes such as the dust clouds . . . complained of in the underlying action."  Id. at 220.  The same analysis applies to the pending action.

This court concludes that loss from dust as occurred here is excluded from coverage under the pollution exclusion of the Hanover policy.  Accordingly, the court will grant the motion of Hanover Insurance Company for summary judgment.

-12-